UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CATANZARITE,<br><br>    Plaintiff,<br><br>    v.<br><br>D. PIERCE, et al.,<br><br>    Defendants. | Case No.: 1:12-cv-01502-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br><br>[ECF No. 26] |

Plaintiff John Catanzarite is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

This action is proceeding on Plaintiff's due process claim against Defendants Carrasco, Croxton, Drake, Gassaway, Gonzalez, Holland, Liles, Marshall, McLaughlin, Miner, Nipper, Pierce, Reed, Rouston, Schulteis, Snider, Steadman, and Walker.

On March 24, 2014, Defendants filed a motion to dismiss based on the failure to exhaust the administrative remedies and violation of the applicable statute of limitations. Although Plaintiff requested and received an extension of time, Plaintiff did not file an opposition. Pursuant to Local Rule 230(l), all motions are deemed submitted after the deadlines for filing an opposition and/or reply expire. Local Rule 230(l).

1

## II.

## DISCUSSION

### A. Summary of Complaint

Plaintiff's allegations arise out of his initial placement and continued retention in the Security Housing Unit (SHU) from 2002 to 2012.

Plaintiff names M. Carrasco, F. Gonzalez, J. Marshall, K. Schulteis, K. Holland. A. Reed, C. Rouston, K. Todd, B. Snider, V. McLaughlin, D. Walker, T. Miner, T. Steadmen, J. Ramos, B. Sunday, D. Pierce, M. Nipper, D. Liles. E. Croxton, D. Drake, I. Gassaway, E. Devlin, D. Cowee, and J. Cowan, as Defendants.

Between May 15, 2002, and February 1, 2012, Pelican Bay State Prison (PBSP) and California Correctional Institution (CCI) authorities consciously and methodically conspired to secure and maintain Plaintiff in a perpetual state of Security Housing Unit (SHU) placement by falsifying state documents, fabricating charges, sensationalizing information, and denying Plaintiff's due process rights. Defendants conspired to retain Plaintiff in a perpetual state of SHU placement in retaliation of Plaintiff's role in a hostage incident that occurred in April 2000. Subsequent from Plaintiff's transfer from PBSP to CCI in November 2004, Defendants began to conspire to retain Plaintiff in continuous SHU placement.

On April 14, 2005, Defendant Cowan, Rouston, and McLaughlin willingly and knowingly retained Plaintiff on indeterminate SHU status based on false information and denied Plaintiff's due process right to present evidence during the committee hearing. Defendants retained Plaintiff in SHU status on an indeterminate term based, in part, on his escape from Nebraska and Utah correctional facilities, use of a non-inmate hostage during an escape attempt, and possession of escape paraphernalia.

On April 25, 2005, Plaintiff filed an inmate appeal requesting, among other things, 1) he receive a copy of warrant, extradition, and court documents relative to the Utah and Nebraska escape allegations; 2) a copy of any and all rules violation reports for escape, attempted escape, and possession of escape paraphernalia; 3) a copy of the district attorney referral relative to escape, attempted escape, and possession of escape paraphernalia; and 4) a copy of all CDCR documentation

2

relative to prior SHU terms for escape, attempted escape, and possession of escape paraphernalia. Plaintiff's request for the aforementioned documents was denied and was never addressed in the appeal.

On July 18, 2005, Defendant Nipper gave Plaintiff several documents listed in the confidential chrono dated July 18, 2005, and stated that such documents do not exist.

On July 15, 2005, Defendant Devlin willingly and knowingly denied Plaintiff's due process rights to submit tangible evidence in support of his appeal, and falsified his report to deem Plaintiff an unacceptable escape risk.  The second level appeals response was denied because Plaintiff had backsaw blades and was attempting to escape by cutting his cell window and a handcuff key was discovered in his cell, for which he suffered a rules violation report.

On November 30, 2005, Defendants Nipper, Carrasco, and Walker willingly and knowingly denied Plaintiff the right to present evidence during the ICC.  Defendants were all aware that Plaintiff had documents which contradicted the allegations relative to the case factors cited by them to justify SHU confinement.  When Plaintiff attempted to present the documents to Defendant Nipper, prior to classification and during, he refused to view or consider the documents violating Plaintiff's due process rights.

On November 30, 2005, Defendants Nipper, Carrasco, and Walker willingly and knowingly retained Plaintiff in the SHU on an indeterminate status based on information they knew to be false. This information included escape history, possession of escape paraphernalia, use of hostage during escape attempt, and extreme escape risk.  In addition, Defendants falsified the classification chrono dated November 30, 2005, claiming Plaintiff had escape paraphernalia in 1994 and 1998, and had a history of escape and possession of paraphernalia.

On May 3, 2006, October 11, 2006, February 7, 2007, and August 8, 2007, Defendants Gassaway, Gonzalez, McLaughlin, Liles, and Rouston retained Plaintiff in the SHU on indeterminate status based on information they consciously and methodically sensationalized.  The information asserts, in part, that Plaintiff provided other inmates with bomb-making blue prints of a chemical weapon which can be used against staff.

1  On or about October 6, 2006, August 3, 2007, and March 6, 2008, Defendant Steadmen
2  willingly and knowingly denied Plaintiff's due process right to an administrative segregation hearing.
3  On or about February 2, 2007, Defendant Ramos willingly and knowingly denied Plaintiff's
4  due process rights to administrative segregation review relative to the ICC hearing on February 7,
5  2007.
6  Between November 30, 2006, and July 10, 2008, Defendants Nipper, Carrasco, Walker,
7  Gassaway, Gonzalez, McLaughlin, Liles, and Rouston willfully and knowingly retained Plaintiff in
8  CCI-SHU without the required Classification Staff Representative (CSR) endorsement.
9  Between August 20, 2008, and December 9, 2010, Defendants Croxton, Snider, Schulteis,
10  Liles, McLaughlin, Carrasco, Drake, Holland, and Walker willingly and knowingly retained Plaintiff
11  in CCI-SHU without required CSR endorsement.
12  All Defendants were aware that the so-called "case factors" cited to justify SHU retention
13  relative to the same were either false, fabricated, sensationalized, and/or unsubstantiated.
14  These factors include, but are not limited to, escape from the state of Utah and Nebraska; use
15  of a non-inmate hostage of escape paraphernalia (backsaw blades, U.S. currency, handcuff key);
16  attempt escape from CMF by cutting cell windows; sexual assault of medical staff; providing inmates
17  with bomb-making blue prints of a chemical weapon; the confiscation of two drawings from
18  Plaintiff's cell explaining the manufacture of improvised explosive devices; a written "manifesto"
19  confirming bomb-making blue prints, plans to attack staff, and biochemical weapons; extreme escape
20  risk due to escape history; plans to escape; and past escape attempts from the California Department of
21  Corrections and Rehabilitation.
22  Between August 20, 2008, and November 24, 2010, Defendants Croxton, Schulteis,
23  McLaughlin, Liles, Carrasco, Snider, Drake, Holland, and Walker willingly and knowingly retained
24  Plaintiff in continuous SHU placement under the pretext that Plaintiff's case was deferred to the
25  Departmental Review Board (DRB) for future SHU placement consideration, effectively and officially
26  relinquishing any and all authority to release Plaintiff from the SHU.
27  Subsequent to a discussion between Defendant Pierce and members of the Classification
28  Service Unit on or about November 24, 2010, Defendant Pierce informed Plaintiff that his case was

4

never submitted to the DRB for review.  As a result, Plaintiff's right to periodic review amounted to no more than a "meaningless gesture," because defendants continued to retain Plaintiff in the SHU pending a review they knew would never take place.

Relative to the hearing on March 6, 2009, Defendant Liles in support of Defendant Steadmen, falsified his classification chrono, dated March 11, 2009, for which Plaintiff never received.

On April 30, 2010, Defendant Sunday willfully and knowingly denied Plaintiff's due process right to an administrative segregation hearing.  Defendant Drake in support of Defendant Sunday, falsified his classification chrono dated May 5, 2010, asserting that Plaintiff's due process rights were met.

Defendant Drake consciously and methodically falsified the classification chrono dated September 2, 2009, and May 5, 2010, relative to her attempt to explain anticipated ICC action prior to the committee review indicating that Plaintiff "refused" to speak with her regarding the issue. Defendant Drake also falsified the classification chrono by stating that mental health interviewed Plaintiff prior to the hearings on September 2, 2009, and May 5, 2010, regarding his current mental health status and whether he required staff assistance to understand the issues.

During the classification hearing on May 7, 2008 and August 20, 2008, Defendants Croxton, Schulteis, and McLaughlin willingly and knowingly retained Plaintiff on indeterminate SHU status based on information they clearly knew to be untrue.  During the committee review, Defendant McLaughlin verbally confirmed that with respect to the confidential memorandums dated September 2, 1994, September 23, 1994, and February 1, 1995, Plaintiff was only investigated for possible possession of escape paraphernalia and was subsequently exonerated.  With respect to the confidential memorandum dated October 7, 2004, Plaintiff found a handcuff key and turned it over to custody. The Nebraska and Utah authorities verified no record of escape.  Consequently, the language in the confidential chronos dated May 7, 2008 and August 20, 2008, was changed to reflect such information.  However, Plaintiff was still retained in the SHU on an indeterminate basis.

Defendants Croxton, Schulteis, and McLaughlin further based the indeterminate SHU status on the premise that Plaintiff sexually assaulted a female during the hostage incident of April 2000,

5

knowing it was untrue. Defendants Drake, Holland, and Walker also allege a sexual battery during the hostage incident in April 2000.

On November 24, 2010, and December 15, 2010, Defendants Pierce, Holland, Mine, and Walker willingly and knowingly retained Plaintiff on indeterminate SHU status based on information they clearly knew to be false and/or sensationalized. This information includes Plaintiff's use of a weapon during the hostage incident of April 2000, escape history, sexual battery of staff during the hostage incident, escape plots, and bomb-making prints.

On June 22, 2011, Defendants Pierce, Reed, and Walker retained Plaintiff on an indeterminate SHU status based on information provided by a medical doctor which they clearly knew and admitted was false. Specifically, Defendants retained Plaintiff on indeterminate SHU status based on a doctor's unqualified and unsubstantiated escape hypothesis. Said hypothesis was based on an informational chrono authored by Dr. Tate, in which he lied about an event where Plaintiff attempted to escape. Defendants utilized such information as a factor for indeterminate SHU status on June 22, 2011. Defendant Pierce confirmed this information to be false prior to June 22, 2011.

Defendants also retained Plaintiff on indeterminate SHU status based on Plaintiff's disciplinary history. On or about July 28, 2011, Plaintiff, for purpose of appeal, requested from Defendant Pierce to know the exact nature of the case factors used during the June 22, 2011, classification hearing. Defendant Pierce refused to disclose the information because he knew such information was false denying Plaintiff's due process rights.

On February 1, 2012, during classification, Defendants Pierce, Walker, and Marshall willingly and knowingly violated Plaintiff's right to due process and meaningful review by 1) refusing Plaintiff the right to present evidence during said classification; 2) refusing to disclose the case factors and/or circumstantial considerations employed to justify indeterminate SHU placement, and 3) employing information they clearly knew to be false.

The committee hearing conducted on February 1, 2012, amounted to nothing more than a "meaningless gesture," based upon Defendant Marshall's instructions. Defendant Pierce refused to disclose the case factors they employed to retain Plaintiff on an indeterminate SHU status. During classification, Defendant Marshall openly stated that it doesn't matter what the case factors are

because you will never be released and you will spend your entire career in the SHU regardless of the case factors.

In conclusion, Plaintiff contends that between November 10, 2004, and February 1, 2012, Defendants Nipper, Carrasco, Walker, Gassaway, Gonzalez, McLaughlin, Liles, Rouston, Croxton, Schulteis, Snider, Drake, Holland, Pierce, Miner, Reed, Todd, and Cowen, willfully and knowingly violated Plaintiff's due process rights by utilizing case factors known to be false to retain Plaintiff in the SHU on an indeterminate basis.

As relief, Plaintiff requests nominal damages for everyday he has spent in the SHU between November 10, 2004, and February 1, 2012, punitive damages, and an injunction ordering his release from the SHU to general population.

**B.     Motion to Dismiss Legal Standard**

Defendants move to dismiss the second amended complaint for failure to exhaust the administrative remedies and as barred, in part, by the statute of limitations.

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any

7

doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

Further, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" Von Saher, 592 F.3d at 969 (quoting Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995)).

**C.    Analysis**

**1.    Exhaustion of Administrative Remedies**

Defendants seek dismissal based on Plaintiff's failure to exhaust the administrative remedies by way of an unenumerated Rule 12(b) motion to dismiss. 42 U.S.C. §1997e(a); Fed. R. Civ. P. 12(b).

On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) with respect to the proper procedural device for failing the issue of administrative exhaustion. Albino v. Baca, No. 10-55702, 2014 WL 1317141, at *1 (9th Cir. Apr. 3, 2014) (en banc). Following the decision in Albino, Defendants may raise the issue of exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. Albino, 2014 WL 1317141, at *4 (quotation marks omitted). An enunumerated Rule 12(b) motion is no longer the proper procedural devise for raising the issue of exhaustion. Id. Accordingly, the Court will recommend to deny Defendants' unenumerated Rule 12(b) motion, without prejudice, on procedural grounds, and grant them thirty days following the order resolving the instant recommendation to file a further responsive pleading or motion.

///

///

///

**2.      Statute of Limitations**

As section 1983 contains no specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in § 1983 suits. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Lukovsky v. City of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008).

California's statute of limitations for an action for a personal injury caused by the wrongful or negligent act of another is two years from the date of accrual. Cal. Civ. Pro. Code § 335.1. California's statute of limitations may be tolled up to two years for a prisoner's monetary damage claims. Id. § 352.1. A prisoner, such as Plaintiff,[1] who are serving "less than life" sentences is entitled to two years of tolling under section 352.1(a) of the California Code of Civil Procedure. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). Thus, Plaintiff's claims must have accrued within the four years preceding September 6, 2012-the date the lawsuit was filed with application of the mailbox rule. Douglas v. Noelle, 567 F.3d 1103, 1106-1107 (9th Cir. 2009).

The statute of limitations begins to run once a plaintiff's cause of action has accrued. TwoRivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999). Accrual occurs when the plaintiff knows or has reason to know of the injury on which his action is based. Id.  As stated in the Court's November 28, 2013, screening order, Plaintiff stated due process violations during 2006 and 2012.[2] Plaintiff alleges isolated instances regarding review of his placement and retention in administrative segregation and challenges the particular evidence and/or procedures used to support such finding. Plaintiff knew or should have known of the injury, i.e. his alleged improper placement and/or retention in segregated housing on the date that the review placement occurred. Because Plaintiff did not file the instant suit until September 6, 2012, Plaintiff exceeded the statute of limitations for all claims based on events occurring before September 6, 2008, and those claims must be dismissed from the action. Cal. Code Civ. Proc. §§ 335.1, 352.1(a); Wilson, 471 U.S. at 269, 280; Jones, 393 F.3d at 927.

---

[1] See ECF No. 27, Exhibit A-Abstract of Judgment, of which the Court takes judicial notice. Fed. R. Evid. 201.

[2] Specifically, the Court found Plaintiff's claim regarding the due process violations that allegedly took place between the period of November 2004 and October 2006, which took place at CCI in Tehachapi, California, must be dismissed because they are precluded from relitigation under the doctrine of collateral estoppel.

The action shall thus proceed only as to events occurring after September 6, 2008, and Defendants are entitled to dismissal of all claims prior to September 6, 2008 as barred by the statute of limitations.

### III.

### RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that:

1. Defendants' unenumerated Rule 12(b) motion be DENIED without prejudice; and
2. Defendants' motion to dismiss Plaintiff's claims arising prior to September 6, 2008, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 9, 2014**

UNITED STATES MAGISTRATE JUDGE