1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN CATANZARITE,                    )   Case No.: 1:12-cv-01502-LJO-SAB (PC)
                                          )
12                    Plaintiff,          )   FINDINGS AND RECOMMENDATIONS
                                          )   REGARDING DEFENDANTS' MOTION FOR
13        v.                              )   SUMMARY JUDGMENT
                                          )
14   D. PIERCE, et al.,                   )   [ECF No. 63]
                                          )
15                    Defendants.         )
                                          )
16   _____ )

17          Plaintiff John Catanzarite is appearing pro se and in forma pauperis in this civil rights action

18   pursuant to 42 U.S.C. § 1983.

19                                           **I.**

20                              **PROCEDURAL BACKGROUND**

21          This action is proceeding on Plaintiff's due process claim against Defendants Carrasco,

22   Croxton, Drake, Gassaway, Gonzalez, Holland, Liles, Marshall, McLaughlin, Miner, Nipper, Pierce,

23   Reed, Rouston, Schulteis, Snider, Steadman, and Walker.

24          Defendants previously filed a motion to dismiss, and the Court dismissed all of Plaintiff's

25   claims that occurred before September 6, 2008.[1]  (ECF No. 54.)

26

27   _____

28   [1] As a result of the statute of limitations bar and dismissal on other grounds, Plaintiff's claims numbered 2, 7 through 14
     have been dismissed.

                                            1

On January 16, 2015, Defendants filed a motion for summary judgment for failure to exhaust the administrative remedies.  Pursuant to court order, Plaintiff filed an opposition on May 4, 2015, and Defendants filed a reply on May 11, 2015.

## II.

## DISCUSSION

### A.      Motion for Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d

978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## B.    Exhaustion under the Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings.  Albino, 747 F.3d at 1170.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  Prior to 2011, the process was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15,

3

§ 3084.2(a), and appeal had to be submitted within fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c).  Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level, and third formal level, also known as the Director's Level.  Tit. 15, § 3084.5.  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201.  On January 28, 2011, the inmate appeals process was modified and limited to three level of review with provisions allowing the first level to be bypassed under specific circumstances.  Cal. Code Regs. tit. 15, § 3084.7.

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  Jones v. Bock, 549 U.S. 199, 219 (2007).  "The level of detail necessary in a grievance to comply with the grievances procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Id.  In California, the courts have previously found that CDCR guidelines do not need to identify the defendants by name because the proper form and CDCR regulations do not require identification of specific individuals.  See, e.g., Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

However, effective January 28, 2011, the regulations require inmates to identify the staff members involved, and provide as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).

### C.    Summary of Complaint

Between 2008 and February 1, 2012, Pelican Bay State Prison (PBSP) and California Correctional Institution (CCI) authorities consciously and methodically conspired to secure and maintain Plaintiff in a perpetual state of Security Housing Unit (SHU) placement by falsifying state

documents, fabricating charges, sensationalizing information, and denying Plaintiff's due process rights.

Between 2008 and December 9, 2010, Defendants Croxton, Snider, Schulteis, Liles, McLaughlin, Carrasco, Drake, Holland, and Walker willingly and knowingly retained Plaintiff in CCI-SHU without required CSR endorsement.

All Defendants were aware that the so-called "case factors" cited to justify SHU retention relative to the same were either false, fabricated, sensationalized, and/or unsubstantiated.

These factors include, but are not limited to, escape from the state of Utah and Nebraska; use of a non-inmate hostage of escape paraphernalia (backsaw blades, U.S. currency, handcuff key); attempt escape from CMF by cutting cell windows; sexual assault of medical staff; providing inmates with bomb-making blue prints of a chemical weapon; the confiscation of two drawings  from Plaintiff's cell explaining the manufacture of improvised explosive devices; a written "manifesto" confirming bomb-making blue prints, plans to attack staff, and biochemical weapons; extreme escape risk due to escape history; plans to escape; and past escape attempts from the California Department of Corrections and Rehabilitation.

Between 2008 and November 24, 2010, Defendants Croxton, Schulteis, McLaughlin, Liles, Carrasco, Snider, Drake, Holland, and Walker willingly and knowingly retained Plaintiff in continuous SHU placement under the pretext that Plaintiff's case was deferred to the Departmental Review Board (DRB) for future SHU placement consideration, effectively and officially relinquishing any and all authority to release Plaintiff from the SHU.

Subsequent to a discussion between Defendant Pierce and members of the Classification Service Unit on or about November 24, 2010, Defendant Pierce informed Plaintiff that his case was never submitted to the DRB for review.  As a result, Plaintiff's right to periodic review amounted to no more than a "meaningless gesture," because defendants continued to retain Plaintiff in the SHU pending a review they knew would never take place.

Relative to the hearing on March 6, 2009, Defendant Liles in support of Defendant Steadmen, falsified his classification chrono, dated March 11, 2009, for which Plaintiff never received.

On April 30, 2010, Defendant Sunday willfully and knowingly denied Plaintiff's due process right to an administrative segregation hearing.  Defendant Drake in support of Defendant Sunday, falsified his classification chrono dated May 5, 2010, asserting that Plaintiff's due process rights were met.

Defendant Drake consciously and methodically falsified the classification chrono dated September 2, 2009, and May 5, 2010, relative to her attempt to explain anticipated ICC action prior to the committee review indicating that Plaintiff "refused" to speak with her regarding the issue. Defendant Drake also falsified the classification chrono by stating that mental health interviewed Plaintiff prior to the hearings on September 2, 2009, and May 5, 2010, regarding his current mental health status and whether he required staff assistance to understand the issues.

During the classification hearing on May 7, 2008 and August 20, 2008, Defendants Croxton, Schulteis, and McLaughlin willingly and knowingly retained Plaintiff on indeterminate SHU status based on information they clearly knew to be untrue.  During the committee review, Defendant McLaughlin verbally confirmed that with respect to the confidential memorandums dated September 2, 1994, September 23, 1994, and February 1, 1995, Plaintiff was only investigated for possible possession of escape paraphernalia and was subsequently exonerated.  With respect to the confidential memorandum dated October 7, 2004, Plaintiff found a handcuff key and turned it over to custody. The Nebraska and Utah authorities verified no record of escape.  Consequently, the language in the confidential chronos dated May 7, 2008 and August 20, 2008, was changed to reflect such information.  However, Plaintiff was still retained in the SHU on an indeterminate basis.

Defendants Croxton, Schulteis, and McLaughlin further based the indeterminate SHU status on the premise that Plaintiff sexually assaulted a female during the hostage incident of April 2000, knowing it was untrue.  Defendants Drake, Holland, and Walker also allege a sexual battery during the hostage incident in April 2000.

On November 24, 2010, and December 15, 2010, Defendants Pierce, Holland, Mine, and Walker willingly and knowingly retained Plaintiff on indeterminate SHU status based on information they clearly knew to be false and/or sensationalized.  This information includes Plaintiff's use of a

6

weapon during the hostage incident of April 2000, escape history, sexual battery of staff during the hostage incident, escape plots, and bomb-making prints.

On June 22, 2011, Defendants Pierce, Reed, and Walker retained Plaintiff on an indeterminate SHU status based on information provided by a medical doctor which they clearly knew and admitted was false.  Specifically, Defendants retained Plaintiff on indeterminate SHU status based on a doctor's unqualified and unsubstantiated escape hypothesis.  Said hypothesis was based on an informational chrono authored by Dr. Tate, in which he lied about an event where Plaintiff attempted to escape. Defendants utilized such information as a factor for indeterminate SHU status on June 22, 2011. Defendant Pierce confirmed this information to be false prior to June 22, 2011.

Defendants also retained Plaintiff on indeterminate SHU status based on Plaintiff's disciplinary history.  On or about July 28, 2011, Plaintiff, for purposes of appeal, requested from Defendant Pierce to know the exact nature of the case factors used during the June 22, 2011, classification hearing. Defendant Pierce refused to disclose the information because he knew such information was false denying Plaintiff's due process rights.

On February 1, 2012, during the classification hearing, Defendants Pierce, Walker, and Marshall willingly and knowingly violated Plaintiff's right to due process and meaningful review by 1) refusing Plaintiff the right to present evidence; 2) refusing to disclose the case factors and/or circumstantial considerations employed to justify indeterminate SHU placement, and 3) employing information they clearly knew to be false.

The committee hearing conducted on February 1, 2012, amounted to nothing more than a "meaningless gesture," based upon Defendant Marshall's instructions.  Defendant Pierce refused to disclose the case factors they employed to retain Plaintiff on an indeterminate SHU status.  During classification, Defendant Marshall openly stated that it does not matter what the case factors are because you will never be released and you will spend your entire career in the SHU regardless of the case factors.

As relief, Plaintiff requests nominal damages for everyday he has spent in the SHU between November 10, 2004, and February 1, 2012, punitive damages, and an injunction ordering his release from the SHU to general population.

**D.      Undisputed Facts[2],[3]**

1.      During the times relevant to this action, Defendants Carrasco, Croxton, Drake,
Gassaway, Gonzalez, Holland, Liles, Marshall, McLaughlin, Miner, Nipper, Pierce,
Reed, Rouston, Schulteis, Snider, Steadman, and Walker were employed by the
California Department of Correction and Rehabilitation (CDCR) at California
Correctional Institute.

2.      Inmate appeals are governed by various sections of title 15 of the California Code of
Regulations, which is revised and updated as necessary.

3.      The State of California provides its inmates and parolees the right to administratively
appeal "any departmental decision, action, condition or policy perceived by those
individuals as adversely affecting their welfare."  The State also provides its inmates
the right to file administrative appeals by which inmates can appeal any departmental
decision, action, condition, or policy that adversely affects the inmate's welfare, and
any allegations of correctional officer misconduct.

4.      Each inmate, upon arrival at a Department institution, is provided a copy of this appeal
procedure.  If an inmate chooses to submit a grievance, he fills out and submits a
Department Form 602, which is made available to all inmates.

5.      Inmates seeking to resolve their grievances through the inmate-appeal process must
submit inmate appeals on a CDC Form 602 describing the problem and action
requested.

---

[2] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed.  Local Rule 56-260(b).  Therefore, defendant's statement of undisputed facts is accepted except where brought into dispute by plaintiff's verified complaint and opposition.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[3] Defendants request that the Court take judicial notice of the Operations Manual of the CDCR as to the sections referenced in their motion.  (ECF No. 70.)  The Court may take judicial notice of matters of public record, including records and reports of administrative agencies.  United States v. 14.02 Acres of Land More or Less in Fresno Cnty., 547 F.3d 943, 955 (9th Cir. 2008) (quotations marks and citations omitted).  Accordingly, the Court takes judicial notice of the Operations Manual of the CDCR, as requested by Defendants.

6.      Before January 28, 2011, grievances had to be submitted within 15 working days of the event giving rise to them.  Cal. Code Regs., tit. 15, § 3084.6(c)( updated through Jan. 1, 2011).  The regulations governing CDCR's grievances were revised and became effective January 28, 2011.  As of January 28, 2011, inmate appeals had to be submitted within 30 calendar days of the event giving rise to them.  Cal. Code Regs., tit. 15, § 3084.8(b)(1) (updated through Jan. 1, 2012).

7.       Inmates can obtain blank inmate grievance forms from all correctional and medical staff, from each housing unit, and from the law library.  (Decl. of Wood at ¶ 2.)  The Department's standard practice for processing inmate appeals is to send them to the Appeals Coordinator for processing by either sending the completed grievance through the prison's mail service, the United States mail, or placing the completed grievance form in a drop box located in each housing unit and outside of the program office.  (Decl. of Wood at ¶ 2; Defs' Req. Judicial Not. Ex. B, DOM  §§ 5 4100.3, 54100.6, 54100.29.5.)  A copy of the 602 inmate appeal is also forwarded to case records for placement in the inmate's central file. (Ex B, DOM § 54100.29.5.)  The original 602, along with the written responses to it, are returned to the inmate who drafted it.  (Ex. B. DOM § 54100.15.)

8.      Effective January 28, 2011, regulations require inmates to list all staff members involved in the incident on the 602 inmate appeal form and describe their involvement in the issue.  Cal. Code Regs., tit. 15 § 3084.2(a)(3). To assist in the identification of staff members, the regulations require that inmates include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  Id.  The inmate shall state all facts known and available to him regarding the issue being appealed at the time of submitted the Inmate/Parolee Appeal form (CDC 602 form), and if needed, the Inmate/Parolee Appeal Form Attachment.  Cal. Code Regs., tit. 15 § 3082.2(a)(4).

9.      The appeals coordinator can reject, or "screen," an appeal for various reasons, including failure to comply with the 30-calendar day time limit, incompleteness or

omission of necessary support documents, or failure to attempt to resolve the grievance informally. Cal. Code Regs., tit. 15 § 3084.6.

10.    When the appeals coordinator allows an appeal to go forward, the inmate must pursue his grievance through each level of review to exhaust all available remedies.  Cal. Code Regs., tit. 15 § 3084.7.

11.    Plaintiff submitted inmate grievance log number CCI-0-11-00465 on March 16, 2011.

12.    Plaintiff's inmate grievance log number CCI-0-11-00465 was denied at the second level of review on May 13, 2011.

13.    Plaintiff's inmate grievance log number CCI-0-11-00465 was denied at the Director's Level of Review on November 1, 2011.

14.    Plaintiff submitted inmate grievance log number CCI-0-12-00346 on February 23, 2012.

15.    Plaintiff's inmate grievance log number CCI-0-12-00346 was partially granted at the second level of review on April 3, 2012.

16.    Plaintiff's inmate grievance log number CCI-0-12-00346 was denied at the Director's Level of Review on July 26, 2012.

17.    Plaintiff claims that an inmate grievance submitted July 18, 2011, was rejected on several occasions during the screening of his grievance.  He contends that because it was cancelled it effectively exhausted available administrative remedies.

**E.    Parties' Positions**

Defendants submit that Plaintiff failed to exhaust the administrative remedies by way of the three inmate grievances, relevant to this action, filed at California Correctional Institution.  Defendants argue that inmate appeal No. CCI-0-11-00465 did not exhaust his grievances against any individual Defendants because the appeal was not properly exhausted in accordance with CDCR procedures, and because the factual allegations in the appeal do not match the factual allegations in this lawsuit.  In addition, inmate appeal number CCI-0-12-00346 only addressed claims against Defendants Marshal, Pierce, and Walker for using "stale" or "false" evidence to retain Plaintiff in the security housing unit.

Lastly, the screened-out appeal was insufficient because Plaintiff chose to ignore CDCR procedures and the instructions of the prison's Inmate Appeals Coordinator.

In opposition, Plaintiff argues that he exhausted the administrative remedies in full compliance with the PLRA and the applicable state procedures.

**F.      Findings**

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy.  Albino, 747 F.3d at 1172.  Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances.  See Cal. Code Regs. tit. 15, § 3084.1(a).

The Supreme Court held in Jones v. Bock, that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  In this case, contrary to Plaintiff's contention, the regulations governing CDCR's grievance process were significantly revised effective January 28, 2011, and now provide that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602."  Cal. Code Regs. tit. 15, § 3084.1(b) (2011).  The revised regulations require inmates to identify by name and title or position each staff member alleged to be involved in the action or decision being appealed, along with the dates each staff member was involved in the issue being appealed.  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).  If the inmate does not have this information, he must provide any other available information that would assist the appeals coordinator in identifying the staff member.  Id.  The revised regulations were in effect when the alleged constitutional violations occurred and when Plaintiff submitted his related appeals relevant to this action.

**1.      Administrative Remedy Process**

Defendant bears the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy.  Albino, 747 F.3d at 1172.  Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances.  See Cal. Code Regs. tit. 15, § 3084.1(a).

11

2.     Compliance with PLRA

a.     **Inmate Appeal Number CCI-0-11-00465**

In inmate appeal number CCI-0-11-00465, submitted March 16, 2011, Plaintiff stated the following:

> Following classification of 11-24-10, I received copy of 128-G dated the same (enclosed), said 128-G was hand delivered by counselor Pierce in December 2010. The following day, Pierce returned to say I was going back to committee and issued a 128-G. That hearing took place on 12-15-10 (enclosed). After 3 attempts to obtain the latter 128-G, Pierce delivered it on or about the 28th of Feb. 2011. According to 128-G's dated 11-24-10 and 12-15-10, the last time CSR endorsed me to SHU indeterminate was 7-10-08. And according to 128-G dated 11-24-10, I was never referred to the DRB (enclosed). This department is required to obtain CSR endorsement for "every" SHU extension recommendation. Between 2004 through 2010, I've only been endorsed to SHU indeterminate twice. Thus, a violation of due process rights. Beginning in 8-20-08 through 11-24-10 (enclosed), and verbally confirmed to me by Pierce, my case was never referred to the DRB. But according to 128-G dated 11-24-10 (enclosed), and verbally confirmed to me by Pierce, my case was never referred to the DRB, even though committee continued to retain SHU indeterminate "pending" DRB recommendation. Thus, meaningless gesture and violation of due process.

(ECF No. 69-2, Ex. B.)

On the 602 inmate appeal form, in appeal number CCI-0-11-00465, Plaintiff referenced the following documents in support of his grievance: 128-G dated 8-20-08, 3-11-09, 5-5-10, 11-24-10 and 12-15-10. (Id.) The appeal was denied at the second and third levels of review.

Plaintiff contends that in this appeal he refers to five separate classification actions involving many staff members. (ECF No. 74, Opp'n at 4.) Plaintiff submits that he provided sufficient information, notwithstanding the space and page limitation, to describe the issues of the appeal, the corresponding dates and times, as well as the identify the respective title/position of each involved staff member. Specifically, section F of the appeal states, "CCI Classification Committee Members" as those individuals involved and the supporting documents referenced in the appeal identified each staff member involved by name, title, and respective signature.

Defendants counter that Plaintiff acknowledged the regulations that require him to list all staff members involved in the incident and describe their involvement. Plaintiff failed to identify and describe each Defendants involvement, and Plaintiff did not complain that he could not identify a Defendant or describe their actions because of limited space. When interviewed about the grievance,

Plaintiff also failed to identify Defendants and describe their actions or provide that he had more information relating to the appeal that could not be set forth on the limited space of the grievance form.

In his complaint, Plaintiff alleges that on November 24, 2010, Defendants Croxton, Schulteis, McLaughlin, Liles, Carrasco, Snider, Drake, Holland, and Walker willingly and knowingly retained [him] in continuous SHU placement under the pretext that Plaintiff's case was deferred to the Departmental Review Board (DRB) for future SHU placement consideration, effectively and officially relinquishing any and all authority to release Plaintiff from the SHU. (Compl. at 10.) Subsequent to a discussion between Defendant, Correctional Counselor Pierce and members of the Classification Service Unit on or about November 24, 2010, Defendant Pierce informed Plaintiff that Defendants never submitted his case to the DRB for review and/or consideration, resulting in periodic review amounting to more than a meaningful gesture. (Id. at 10-11.) Plaintiff further asserts that "on November 24, 2010, and December 15, 2010, Defendants Pierce, Holland, Miner, and Walker willingly and knowingly retained Catanzarite on indeterminate SHU status based on information they clearly knew to be false and/or sensationalized." (Id. at 21.)

An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress," and "the prisoner need only provide the level of detail required by the prison's regulations." Sapp, 623 F.3d at 824. CDCR's regulations require a description of "the specific issue under appeal and the relief requested," and a description of the staff members involved and their involvement.[4] § 3084.2(a).

The only issue sufficiently grieved in inmate appeal number CCI-0-11-00465 is Plaintiff's claim that he was retained in the SHU without appropriate review by the DRB following the November 24, 2010, hearing. The more difficult question is which, if any, Defendants were exhausted by way of this appeal. This grievance is sufficient to exhaust Plaintiff's claim against Defendants Pierce and Holland, the only Defendants identified as classification members of the November 24,

---

[4] As previously stated, CDCR amended its relevant regulations as an emergency on December 13, 2010, and the regulations became operative on January 28, 2011, applicable to the instant appeal submitted on March 16, 2011.

2010, hearing for which Plaintiff seeks liability relevant to this claim.[5]  The reference to the challenge of the decision by the committee coupled with the date of the hearing and copy of the relevant hearing is sufficient to exhaust as the committee members involved in the November 24, 2010, decision, even if page two of the hearing which contained the committee members name was not submitted with the appeal.  Plaintiff specifically provided that he challenged the action of the committee, provided the date of the challenged decision, and attached at least page one of the November 24, 2010, committee hearing.  The Court finds this was sufficient to allow the appeals coordinator to identify the staff members involved and thereby placed prison officials on notice of his claim against the committee members, Pierce and Holland, involved in the November 24, 2010, classification decision.

This grievance does not grieve Plaintiff's subsequent due process claim that on November 24, 2010 and December 15, 2010, Defendants Pierce, Holland, Miner, and Walker knowingly retained him in the SHU based on information they knew to be false and/or sensationalized.  This claim as presented in the complaint is based on the use of false information, including his use of a weapon during the hostage incident of April 2000, escape history, sexual battery of staff during the hostage incident, escape plots, and bomb-making prints.  (Compl. at 10.)  There is no mention in appeal number CCI-0-11-00465 of any the above referenced factors that were "falsely" used to retain Plaintiff in the SHU, and this appeal did not suffice to place prison officials on nature as to the specific issue of Plaintiff's claim.  The regulations in effect in 2011 required notice of the "specific issues," and Plaintiff's appeal number CCI-0-11-00465 did not suffice to provide notice as to the issues underlying his due process claim involving use of false and/or sensationalized information to retain him in the SHU.  Plaintiff's claim that he grieved five separate classification actions is not persuasive.  A plain reading of the appeal reveals that Plaintiff challenged only that his case was never submitted to the DRB for review in accordance to the CDCR 128-G dated November 24, 2010.  Accordingly, the Court finds that Plaintiff did not exhaust his due process claim that on November 24, 2010, and December 15, 2010, Defendants Pierce, Holland, Miner, and Walker willingly and knowingly retained

---

[5] The November 24, 2010, classification review also lists S. Archuleta, R. Bounville, and T. Miner as members of the review committee; however, these individuals are not named in the complaint as Defendants with regard to Plaintiff's due process challenge to the November 24, 2010, hearing.  (ECF No. 77.)

Catanzarite on indeterminate SHU status based on information they clearly knew to be false and/or sensationalized, and Defendants are entitled to summary judgment.  Fed. R. Civ. P. 56; Albino, 747 F.3d at 1166.

Defendants' claim that this appeal was untimely and cannot challenge the November 2010 hearing is not persuasive.  Defendants argue that by waiting until March 22, 2011 to submit this appeal, Plaintiff violated CDCR's procedural rule requiring submission of his inmate appeal within thirty calendar days of the November 24, 2010 event described in the complaint.  Defendants cite Woodford v. Ngo, 548 U.S. 81, 84 (2006) in support of their argument.  In Woodford, the inmate's grievance was rejected by prison officials as untimely because it was not filed within the requisite fifteen-day time period provided for in the applicable state regulation, and the inmate argued that because there were no longer any administrative remedies available to him, he exhausted.  Woodford, 548 U.S. at 86-88.  This argument was rejected by the Supreme Court, as the inmate failed to comply with the fifteen-day procedural requirement, thereby causing the process to be unavailable, and that failure was not overlooked or otherwise excused by prison officials.  Here, in contract, Plaintiff's grievance was accepted for review and processed on its merits, despite being submitted beyond any thirty day period of time and it was substantively reviewed and decided at each of level of review.  Thus, Defendants cannot now claim, by way of a defense to a section 1983 complaint, that Plaintiff effectively violated prison regulations relating to this appeal that was reviewed on the merits.

Accordingly, the Court finds appeal number CCI-0-11-00465, sufficiently exhausted Plaintiff's due process claim against relating to the November 24, 2010, hearing and failure to obtain DRB review as to Defendants Pierce and Holland.

### 2.      Inmate Appeal Number CCI-0-12-00346

In his complaint, Plaintiff alleges that on February 1, 2012, during the classification hearing Defendants Pierce, Walker, and Marshall willingly and knowingly violated Plaintiff's right to due process and meaningful review by 1) refusing Plaintiff the right to present evidence; 2) refusing to disclose the case factors and/or circumstantial considerations employed to justify indeterminate SHU placement, and 3) employing information they clearly knew to be false, sensationalized, and stale.  (Compl. at 23-24.)  Plaintiff further alleges that:

Committee hearing of 2-1-12 amounted to no more than a "meaningless gesture," as upon Defendant Marshall's instructions, Defendant Pierce refused to disclose the case factors they'd employed to retain Plaintiff on SHU indeterminate status. During classification Defendant Marshall openly stated that: 1) it doesn't matter what the case factors are because you'll (Plaintiff) "never" be release, and "you'll" (Plaintiff) spend your "entire career in the SHU…" regardless of what the case factors are. Consequently, defendants denied Plaintiff the right to know why committee retained him on SHU indeterminate status, and the right to submitted evidence and/or argue the issues during committee.

(Id. at 24.)

In appeal number CCI-0-12-00346, Plaintiff grieved the following:

Relative to committee action of 2-1-12 (see enclosed 128-G dated the same), Appellant contends that: 1) the info. provided in conf. memo dated 1-24-06 is stale, and 2) due to its staleness committee hasn't used it as a "factor" for SHU continuation since 2008. During the previous committee hearing of 6-22-11, committee retained SHU based solely on disciplinary history and 128G's dated 5-8-11 and 5-25-11 (128-G dated 6-22-11). Appellant file [sic] a 602 to know the exact nature of each and every fact used to justify SHU continuation of 6-22-11. Said info was provided by CC-II Carter (see enclosed "first level response" and response to CDC 22 form" dated Oct. 19, 2011). Additionally, appellant disputes this department's position that the "manifesto" confirms a plot to attack staff, bomb [sic] making blue prints, and that appellant provided said blue prints to other people. Appellant contends that CCI authorization consciously exaggerated the same to retain SHU continuation, knowing it to be false, if not impossible. For example: the chemical element described in the so-called "blue print" is listed as Cesium 55, a chemical that does not occur free in nature (not found free in nature); yet this department asserts Appellant to be capable of obtaining and using such a weapon in prison. Committee cannot make stale a given factor by not employing it for a giving time, switch to other factors, drop them, then go back to something they used several years ago.

(ECF No. 69-3, Ex. C.)

On the 602 inmate appeal form, in appeal number CCI-0-12-00346, Plaintiff referenced the following documents in support of his complaint: 128-G dated 6-22-11 and 2-1-12; first level response to CDC 22 dated 10-19-11; CDC 1030 dated 1-25-06; English and Dutch version of the so-called "manifesto" for a total of 12 documents. (Id.)

This appeal was bypassed at the first level of review and denied at the second and third levels of review. (Id.)

///

16

Defendants argue this appeal does not exhaust any claims against Defendant Carrasco, Croxton, Drake, Gassaway, Gonzalez, Holland, Liles, McLaughlin, Miner, Nipper, Reed, Rouston, Schulteis, Snider, or Steadman because they are not named or otherwise identified in the appeal, and no conduct by them is described in the appeal.  Defendants further argue that this appeal is insufficient to exhaust Plaintiff's claims that he was denied the right to present evidence, or that the committee refused to disclose the case factors or circumstantial considerations employed to justify his indeterminate-security-housing-unit placement since none of those allegations are raised in the appeal. However, Defendants acknowledge this appeal, at most, exhausts the claims against Defendants Marshall, Pierce, and Walker for using "stale" or "false" evidence to retain him in the security housing unit.

In opposition, Plaintiff argues that given the page restriction on inmate appeals, he was limited as to what information could be provided.  Plaintiff contends this appeal exhausted his claim that he was not permitted to submit evidence at his February 1, 2012, Institutional Classification Committee hearing.  Plaintiff further contends that points to section F of the appeal in which he argues that he tried to present evidence during the committee hearing but was prevented from doing so.

The Court finds appeal number CCI-0-12-00346, sufficiently exhausted Plaintiff's due process claims against Defendants Marshall, Pierce, and Walker.  There was sufficient factual allegations contained on the 602 appeal form and accompanying supporting documentation to place prison officials on notice of an alleged due process violation took place at the February 1, 2012, review hearing conducted by Defendants Marshall, Pierce, and Walker.  (ECF No. 69-3, Ex. C.)

However, this appeal did not grieve that Plaintiff was refused the right to present evidence, or that the Defendants refused to disclose the case factors or circumstantial considerations employed to justify indeterminate-security-housing-unit placement.  Indeed, the relief requested in this appeal was for a near hearing at which the "stale" factors would not be considered, and an investigations into the legitimacy of the factors used by the committee at the February 1, 2012, committee.  (ECF No. 69-3, Ex. C.)  Further, there is no support either factually or by identification of name or title as to Defendants Croxton, Drake, Gassaway, Gonzalez, Holland, Liles, McLaughlin, Miner, Nipper, Reed, Rouston, Schulteis, Snider, or Steadman and there is no basis to find prison officials were placed on

notice of any alleged wrongdoing by these individuals. Plaintiff's claim that he presented his due process claim relating to the inability to present evidence at the classification hearing in his request for third level review does not serve to exhaust such claim. The addition of Plaintiff's due process claim based on the inability to present certain evidence at his February 1, 2012, classification hearing at his request for third level review did not exhaust such retaliation claim because new claims are not permitted as the appeal moves through the levels of review. See Sapp, 623 F.3d at 825 (concluding that it was proper for prison official to "decline[] to consider a complaint about [prisoner's] eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition."); Dawkins v. Butler, 2013 WL 2475870, at *8 (S.D. Cal. 2013) (a claim made for the first time in plaintiff's request for third level review was insufficient to exhaust the issue where it was not included in the original appeal). Thus, Plaintiff cannot now seek liability by way of section 1983 against these defendants.

### 3. Screened-Out Appeal

In his complaint, Plaintiff alleges that "CDC appeal dated **7**-18-11 was rejected on several occasions during screening. On 9-29-11, appeals cancelled the same, effectively exhausting all 'available' administrative remedies." (Compl. at 4.)

Defendants submit that Plaintiff's appeal was screened out and eventually cancelled for Plaintiff's failure to follow CDCR procedural rules and the instructions of the prison's Inmate Appeals Coordinator. (ECF No. 69, Decl. of Wood, Ex. D.) Defendants argue that Plaintiff's failure to comply with CDCR regulations, and his failure to obtain a Director's level appeal decision on his screened-out appeal means that it is ineffective to exhaust any claims in this suit.

Plaintiff contends that he continuously followed the instructions provided upon rejection of the grievance and re-submitted the grievance several times and each time it was rejected for a similar or different reason.

Plaintiff's claim that because his appeals were cancelled he effectively exhausted, is without merit. Defendants submit each of the rejection letters dated July 25, 2011, August 1, 2011, August 25, 2011, September 2, 2011, and September 29, 2011, which sets forth the reasons the grievance was screened-out and returned to Plaintiff for resubmission. (Decl. of Wood, Ex. D.) In response to such

18

letters, Plaintiff either failed to correct the deficiency and/or created a new deficiency in the resubmitted grievance. Either way, Plaintiff failed to exhaust any claims by way of this grievance because it is impossible to know whether the appeal had any relevance to the claims raised or the Defendants named in this lawsuit because it was never properly submitted for review.  Plaintiff's claim that the September 21, 2011, letter did not provide a reason for the cancellation is without merit. The September 29, 2011, letter specifically stated that the appeal was cancelled because Plaintiff continued "to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal.  Additionally, the CDC 695 form dated 4/18/11 predates the date of the appeal, 7/18/11 and is not a party of this appeal, nor is it for the same category."  (Decl. of Wood, Ex. D at 6.)

### 4.       Claim for Injunctive Relief

Defendants argue that Plaintiff's request for injunctive relief that the Court order he be released from California Correctional Institution security housing unit should be denied because Plaintiff is no longer housed at the California Correctional Institute or in the security housing unit.

Defendants are correct.  Prospective relief in a civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff.  18 U.S.C. § 3626(a)(1).  The Court shall not grant or approve any prospective relief unless the Court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  Id.  That is, an inmate's claim for prospective injunctive relief is moot when he "no longer is subjected to [the allegedly unconstitutional] policies."  Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  In this instance, Plaintiff's request that the Court order he be released from California Correctional Institute security housing unit and released to general population that is consistent with his classification score.  Defendants submit evidence that Plaintiff has already been released from California Correctional Institution and the security housing unit and is currently incarcerated at Sierra Conservation Center.  (ECF No. 68, Decl. of Steele, Ex. A.)  Accordingly, Plaintiff's request for injunctive relief must be dismissed.

///

///

19

### III.

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Plaintiff exhausted the following two claims for relief:

      a).      Plaintiff's due process claim relating to the November 24, 2010, hearing and failure to obtain DRB review as to Defendants Pierce and Holland;

      b).      Plaintiff's due process claim relating to the February 1, 2012, classification hearing as to Defendants Pierce, Walker, and Marshall;

2.      Plaintiff did not exhaust any claims against Defendants Carrasco, Croxton, Drake, Gassaway, Gonzalez, Liles, McLaughlin, Miner, Nipper, Reed, Rouston, Schulteis, Snider, or Steadman and these defendants are entitled to summary judgment; and

3.      Plaintiff's claim for injunctive relief is moot and should be dismissed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **June 15, 2015**

                            UNITED STATES MAGISTRATE JUDGE